UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| THOMAS A. DIVITO,      )<br>            Plaintiff,      )<br>                              )<br>        -vs-                )<br>                              )<br>                              )<br>KILOLO KIJAKAZI,[1]         )<br>Acting Commissioner of Social Security,  )<br>                              )<br>            Defendant.     )<br>_____ ) | Civil Action No.: 4:20-cv-03698-TER<br><br>**ORDER** |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for disability insurance benefits (DIB). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This action is proceeding before the undersigned pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. Proc. R. 73.

## I. RELEVANT BACKGROUND

**A.     Procedural History**

Plaintiff filed an application for DIB on January 21, 2018, alleging inability to work since June 1, 2016. His claims were denied initially and upon reconsideration. Thereafter, Plaintiff filed a request for a hearing. A hearing was held on October 1, 2019, at which time Plaintiff and a VE testified. The Administrative Law Judge (ALJ) issued an unfavorable decision on November 15, 2019, finding that Plaintiff was not disabled within the meaning of the Act. (Tr. 28). Plaintiff filed

---

[1] Kilolo Kijakazi is the Acting Commissioner of Social Security. Pursuant to Fed. R. Civ. P. 25(d), she is automatically substituted for Defendant Andrew Saul who was the Commissioner of Social Security when this action was filed.

a request for review of the ALJ's decision, which the Appeals Council denied on January 28, 2020, making the ALJ's decision the Commissioner's final decision. (Tr. 1-3). Plaintiff filed this action on October 21, 2020. (ECF No. 1).

**B.     Plaintiff's Background**

Plaintiff was born on May 21, 1965, and was fifty-one years old at the time of the alleged onset. (Tr. 26). Plaintiff has at least a high school education and has past relevant work experience as an auto mechanic. (Tr. 26). Plaintiff alleges disability due to back arthritis, back/leg pain, multiple lumbar and thoracic back surgeries, partial paralysis due to spinal cord compression, and pain. (Tr. 58).

**C.     The ALJ's Decision**

In the decision of November 15, 2019, the ALJ made the following findings of fact and conclusions of law (Tr. 18):

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2021.

2. The claimant has not engaged in substantial gainful activity since June 1, 2016, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: cervical, thoracic and lumbar degenerative disc disease status post multiple spine surgeries, osteoarthritis of the hips, restrictive lung disease, obstructive sleep apnea, carpal tunnel syndrome, chronic peripheral venous insufficiency, and obesity (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined

> in 20 CFR 404.1567(b) except no more than 4 hours of standing or walking during work day, occasionally climb ramps and stairs, never climb ladders, ropes or scaffolds, no more than frequently balance and kneel, occasionally stoop or crouch, never crawl, no exposure to workplace hazards such as unprotected heights and dangerous moving mechanical parts, frequent reaching, handling, fingering frequent exposure to dust, odors, fumes and pulmonary irritants.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.  The claimant was born on May 21, 1965 and was 51 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 1, 2016, through the date of this decision (20 CFR 404.1520(g)).

## II. DISCUSSION

Plaintiff argues that the ALJ's finding— that Plaintiff could perform standing/walking four hours a day, a modified light range of work — exceeded comprehension based on the totality of the record. (ECF No. 23 at 4). Plaintiff argues the ALJ erred in not finding that a borderline age situation existed. Defendant argues the ALJ's analysis here was sufficient and was in accordance with the applicable law and that Plaintiff has failed to show that the ALJ's decision is not based on substantial

evidence. Defendant notes Plaintiff was more than six months away from the next age category at the date of the ALJ's decision.

## A.     LEGAL FRAMEWORK

### 1.     The Commissioner's Determination–of–Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as: the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.  42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions.  *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims).  An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity ("SGA"); (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[2] (4) whether such impairment prevents claimant from performing PRW;[3] and (5)

---

[2] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do.  The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525.  If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment.  20 C.F.R. § 404.1520(a)(4)(iii).  To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria."  20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S.

whether the impairment prevents him from doing SGA. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. See 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*,

---

521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[3] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

5

482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

### 2. The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [ ] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases *de novo* or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir.1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

### B. ANALYSIS

**RFC: Physical**

Plaintiff argues that the ALJ's finding— that Plaintiff could perform standing/walking four

hours a day, a modified light range of work — exceeded comprehension based on the totality of the record. (ECF No. 23 at 4).

An adjudicator is solely responsible for assessing a claimant's RFC. 20 C.F.R. § 416.946(c). In making that assessment, he must consider the functional limitations resulting from the claimant's medically determinable impairments. Social Security Ruling ("SSR") 96–8p, 1996 WL 374184, at *2. This ruling provides that: "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96–8, *7. "The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.* Additionally, " 'a necessary predicate to engaging in a substantial evidence review is a record of the basis for the ALJ's ruling,' including 'a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence.' " *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (*quoting Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)). The ALJ considers the evidence in the record as a whole when analyzing Plaintiff's claims, as does this court when reviewing the ALJ's decision. *See Craig*, 76 F.3d at 595.

The ALJ found an RFC of: "light work as defined in 20 CFR 404.1567(b) except no more than 4 hours of standing or walking during work day, occasionally climb ramps and stairs, never climb ladders, ropes or scaffolds, no more than frequently balance and kneel, occasionally stoop or crouch, never crawl, no exposure to workplace hazards such as unprotected heights and dangerous moving mechanical parts, frequent reaching, handling, fingering frequent exposure to dust, odors, fumes and pulmonary irritants." (Tr. 21).

>The ALJ discussed Plaintiff's allegations as to his physical impairments:
>
>At the hearing, the claimant testified that he is unable to work due to his <u>pain</u>. The claimant testified that he has neuropathy in his legs and has to have help getting dressed some days. The claimant testified that he <u>often spends half the day in bed</u> using ice and heat to help the pain. The claimant stated that due to the medicine he takes he often does not want to leave the house or drive. With respect to sleep, the claimant testified that he uses CPAP due to his sleep apnea and he is able to get about five hours of sleep a night. The claimant testified that he will feel forgetful as a side effect of his medication and he also has stomach issues as a result of his medications. The claimant testified that he tries to go every week to the grocery store and uses the cart to help him walk through the store. He testified that he is able to go up and down stairs if he takes one step at a time and holds on with both hands. The claimant stated that he is able to perform personal care but he will have help getting dressed and only wears slip on shoes. <u>The claimant testifies that he is able to stand for twenty minutes.</u> The claimant stated that he uses ice packs about three times a day. He tries to help around the house and every once in a while will go to the high school football game. The claimant testified that he has to sit in a comfortable chair and often eats in a recliner. He stated that he has very weak legs and uses his arms to push himself up from chairs. The claimant said that he has pain in his hands and takes a special medicine. He stated that he has joint flare ups and his hands will swell and it happens frequently. The claimant stated that he constantly drops things and has trouble writing due to pain. The claimant also testified that he has numbness and tingling in his hands. The claimant stated that he easily gets short of breath.

(Tr. 22)(emphasis added). The ALJ acknowledged Plaintiff had severe physical impairments that did cause him limitations but that the evidence did not fully support Plaintiff's allegations and the evidence did show that Plaintiff was capable of a reduced range of light work. (Tr. 22). The ALJ then considered Plaintiff's history of back pain. (Tr. 22). The ALJ considered notes before the alleged onset date where Plaintiff examined with a positive straight leg raise on the right, decreased range of motion and tenderness in lumbar but normal strength, no atrophy, no sensory deficit, normal muscle tone, normal coordination, and normal gait, citing Exhibit 5F/4. (Tr. 22). The ALJ cited Exhibit 2F regarding Plaintiff's chiropractic treatment for pain. (Tr. 22-23). Plaintiff told Dr. Barker in May 2016 he wanted to drag race cars and that was why he was getting a physical, citing Exhibit

5F/7. The ALJ noted Plaintiff examined with no atrophy, normal range of motion, lumber tenderness, normal strength and reflexes, sensory deficit on his right leg, normal gait, and normal coordination, citing Exhibit 5F/9. The EMG results supported sensorimotor sciatic neuropathy of right lower leg, citing Exhibit 2F/11. (Tr. 23). The ALJ discussed visit exams and notes that led up to Plaintiff's decision for a L2-L3 laminectomy and foraminotomy in November 2016, after a selective nerve root block provided 70-80% relief. It was noted the very severe stenosis correlated with his complaints. The ALJ cited to Exhibits 3F, 3F/139, 3F/127, 3F/46, 3F/122, 3F/26, 3F/23, 3F/18. (Tr. 23). A month after surgery, Plaintiff reported pain that was preventing ambulation. The ALJ noted imaging showed moderate disc space narrowing, synovial cysts extending from L4-5 facet joint abutting the descending left L5 nerve root with lateral recess, and moderate biforaminal narrowing at both L3-4 and L4-5. (Tr. 23). By January 2017, Plaintiff examined as shuffling and using a cane; the ALJ cited to various pages in Exhibit 6F. (Tr. 23). Plaintiff did physical therapy. Then, on January 17, 2017, Plaintiff had another surgery: decompression laminectomy thoracic, facetectomy, and foraminotomy. (Tr. 23). Only two months later, Plaintiff had another surgery: laminectomy with bilateral foraminotomies. (Tr. 23). Two weeks after the last surgery, Plaintiff reported that he did not think the surgery did much. (Tr. 23). Dr. Barker adjusted Plaintiff's medications.

In August 2017, Plaintiff reported right hip pain with EMG showing right L5 radiculopathy; the ALJ cited Exhibit 4F/11. (Tr. 23). Plaintiff received injections. Upon exam in September, Plaintiff had decreased range of motion, tenderness, normal strength, normal gait, normal coordination, no sensory deficits, and normal muscle tone. (Tr. 23). Plaintiff received lumbar facet branch nerve blocks in October 2017. (Tr. 24).

The ALJ noted a February 2018 note showed Plaintiff used a cane for walking, citing to

9

Exhibit 6F/5. The next month, Plaintiff had a "reexploration with T9-10 decompression," citing Exhibit 7F/7. (Tr. 24). At an April 2018 exam, Plaintiff had 5/5 motor muscle strength, steady gait, intact sensory, and 2/4 deep tendon reflexes throughout. (Tr. 24). In June 2018, Plaintiff was diagnosed with probable venous insufficiency; the next month, Plaintiff was negative for swelling. (Tr. 24). Thoracic imaging in July 2018 showed postoperative changes from prior laminectomy, facet arthropathy, and mild to moderate spinal stenosis of the thoracic spine, citing Exhibit 12F. (Tr. 24). The ALJ noted Plaintiff continued to see a chiropractor. Plaintiff was seen in the emergency room in August 2018 complaining of low back pain and groin pain; Plaintiff did not have a kidney stone and was sent home in stable condition.

In November 2018, Plaintiff met with a pain management specialist. (Tr. 24). Exam showed intact gait, normal posture, no mobility aids, able to sit comfortably, positive Fortin Finger test over the SI joint on the right, positive Kemps test, no ataxia, and equal reflexes. (Tr. 24). Plaintiff was diagnosed with postlaminectomy syndrome, chronic pain syndrome, lumbago with sciatica, and spinal stenosis; the ALJ cited to Exhibit 9F/4. (Tr. 24). Notes stated Plaintiff had adequate analgesia from medication regimen and Plaintiff was able to perform household and/or work duties due to improved pain control. (Tr. 24). In December 2018, Plaintiff reported to Dr. Barker that his pain control was fairly decent. (Tr. 24).

In February 2019, Plaintiff reported a 60% improvement from a month of Prialt intrathecal trial but had side effects. The ALJ cited to Exhibit 9F/2. (Tr. 24). Plaintiff had restrictive lung disease. In February 2019, testing showed mild to moderate right sided carpal tunnel syndrome, no electrophysiologic evidence of ulnar neurapraxia and no evidence of underlying neuropathy, myopathy or radiculopathy, citing Exhibit 10F. (Tr. 24). The ALJ considered that in March 2019,

Plaintiff was seen by a neurologist for low back pain and examined with 5/5 motor strength and intact sensation, citing Exhibit 13F. (Tr. 24). Dr. Balturshot stated Plaintiff's myelopathic symptoms had improved; Plaintiff had no gross motor weakness, had made a good recovery from a neurological standpoint, and had no residual neurological deficit. (Tr. 24). The ALJ discussed notes where Plaintiff met with a rheumatologist in March 2019 and complained of worsening joint pain. (Tr. 24). Upon exam, Plaintiff had normal range of motion in all joints, no osteoarthritic changes in the hands, normal handgrip, normal muscle strength, and no tender points, citing Exhibit 16F/6. Plaintiff had osteoarthritis and not rheumatoid arthritis. (Tr. 25).

The ALJ discussed Plaintiff's July 2019 visit for back pain, citing Exhibit 24F. (Tr. 25). Plaintiff examined with a normal gait, negative straight leg raise bilaterally, painful lumbar range of motion, nonpainful range of motion of the hips, 5/5 strength, absent patellar and Achilles reflexes, and no evidence of edema. (Tr. 25). Imaging showed mild degenerative changes in the thoracic and some foraminal stenosis at L4-5 and mild central and lateral recess stenosis at L2-3. Plaintiff received an injection. (Tr. 25). After discussing the record as laid out above, the ALJ then found:

> Based on the above, I find that the claimant is limited to a reduced range of light work. The claimant can have no more than 4 hours of standing or walking during work day. <u>The evidence shows that throughout the record, the claimant has been found to have normal strength and sensation (Exhibits 3F/139, 5F/9). He was noted to use an assistive device for walking after surgery, but with treatment returned to a normal gait</u>. The claimant had surgery in November 2016, but was noted to have a normal gait in May 2017 (Exhibit 6F/16). The claimant had increased symptoms in September 2017 and he used a cane at that time (Exhibit 6F/14). However, by an April 5, 2018 physical examination, the claimant had 5/5 motor muscle strength, steady gait, intact sensory and 2/4 deep tendon reflexes throughout (Exhibit 7F/6). The claimant was found to have only mild osteoarthritis of his hips (Exhibit 3F/46). <u>Based on this evidence, I find that he can only stand and walk for a total of 4 hours because he has consistently reported some pain with his back and hip and he has reported that this is exacerbated by standing and walking. Further, the claimant is obese and has had several surgeries and this was considered as he is also limited to</u>

occasional climbing of ramps and stairs, no climbing of ladders, ropes or scaffolds, no more than frequent balancing and kneeling, occasional stooping or crouching, and never crawling (SSR 19-2). The combination of the claimant's impairments, including his history of venous insufficiency, supports a finding that he should avoid workplace hazards such as unprotected heights and dangerous moving mechanical parts. **No additional limitations are supported as the claimant most often has no edema and normal gait and station** (Exhibits 5F/9, 16F/6, 13F3, 7F/6, 9F/4). The claimant has been limited to frequent reaching, handling and fingering due to evidence of carpal tunnel. However, no greater limitations are warranted as the claimant was found to have only mild to moderate carpal tunnel and has had few complaints (Exhibit 10F). Further, an examination from March 13, 2019, showed that the claimant had normal range of motion in all joints and normal strength and hand grip (Exhibit 16F/6). There is no evidence that the claimant's obesity causes additional manipulative restrictions. <u>The claimant has OSA and has been found to have restrictive lung disease; however, he most often had normal respiratory findings on examinations and no edema. He reported that his OSA was better with CPAP (Exhibit 5F/15). Nevertheless, he has been limited from frequent exposure to dust, odors, fumes and pulmonary irritants.</u>

(Tr. 25)(emphasis added). The ALJ then weighed the only opinions in the record, the non-examining state agency opinions. (Tr. 26). The ALJ found a sit/stand option was not persuasive:

Additionally, she noted that the claimant needed to alternate sitting and standing within normal breaks and this is not persuasive to the extent it suggests that the claimant needs a sit/stand option beyond normal breaks and beyond limiting the claimant to 4 hours of standing and walking in a workday. Again, the claimant **was found to have some improvement with interventions, had many normal findings on examination and thus, could perform the reduced range of light work set forth** in the residual functional capacity above. There is no evidence to support that a sit and stand option is required beyond what is part of normal breaks and a limitation to 4 hours of standing and walking.

(Tr. 26)(emphasis added).

The ALJ supported the functional limitations found in the ALJ's RFC determination with discussion and citation to substantial evidence in the record. An RFC is "an administrative assessment made by the Commissioner based on all the relevant evidence in the case record." *Felton-Miller v. Astrue*, 459 Fed. Appx. 226, 230-31 (4th Cir. 2011) (citing 20 C.F.R. §§

404.1546(c), 416.946(c)).  The court does not reweigh the evidence. *See Johnson v. Saul*, No. 5:20-cv-47-KDW, 2021 WL 717250, at *10 (D.S.C. Feb. 24, 2021)("Even if the evidence highlighted by Plaintiff could support a different result, the court's role is not to second-guess the ALJ's findings.") Where there are two reasonable views of the conflicting evidence, the responsibility falls on the ALJ and it is not the court's duty to decide between them. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005).  The court cannot say that a reasonable mind would not reach this RFC in view of the totality of the evidence. Based upon the foregoing,  substantial evidence supports the ALJ's RFC.

**Borderline Age issue**

Plaintiff argues the ALJ erred in not finding that a borderline age situation existed. Defendant argues the ALJ's analysis here was sufficient and was in accordance with the applicable law and that Plaintiff has failed to show that the ALJ's decision is not based on substantial evidence. Defendant notes Plaintiff was more than six months away from the next age category at the date of the ALJ's decision.

At Step Five, the ALJ must determine whether a claimant can perform "other work."  20 C.F.R. § 416.920(g).  A claimant can perform "other work" if there are one or more jobs existing in significant numbers in the national economy that she can perform given her functional limitations. 20 C.F.R. § 416.966(b).  One way an ALJ can make this determination is through the use of the Medical Vocational Guidelines ("the Grids").  20 C.F.R. pt. 404, subpt. P, app. 2; *Heckler v. Campbell*, 461 U.S. 458, 461-62 (1983).  The Grids contain numbered tabled rules that direct conclusions of "disabled" or "not disabled" taking into account the claimant's physical abilities, age, education, work experience, and her specific RFC (sedentary, light, etc.).  20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(b).  The Grids are, however, limited in applicability and do not cover all possible

variation of factors, i.e., when a claimant's exertional residual functional capacity does not specifically coincide with any one of the defined exertional ranges of work or when a claimant has solely nonexertional limitations or a combination of exertional and nonexertional limitations. *See* 20 C.F.R. pt. 404, subpt. P, app. 2, §§ 200.00(d), (e).

The regulations specifically state that age categories within the Grids should not be applied "mechanically in a borderline situation." 20 C.F.R. § 404.1563(a); *Heckler v. Campbell*, 461 U.S. 458, 462 n.5 (1983); *Gory v. Schweiker*, 712 F.2d 929, 930-31 (4th Cir. 1983). There are specific parameters for what is considered a "borderline situation," as discussed below.

The age Plaintiff is on the date of the ALJ's decision is the relevant date for chronological age analysis, not the date of the Appeals Council decision or the age Plaintiff is when filing with the court. *See Smalls v. Saul*, No. 2020 WL 7647401, at *14 (D.S.C. Oct. 16, 2020), *report and recommendation adopted*, 4:19-CV-02449-RMG, 2020 WL 7053761 (D.S.C. Dec. 2, 2020). Plaintiff was born on May 21, 1965. At the date of the ALJ's decision, November 15, 2019, Plaintiff was fifty-four years old, five months, and 25 days old, or 188 days/ 6 months and 6 days from turning fifty-five years old.

Regulations provide that if Plaintiff is "within a few days to a few months of reaching an older age category," then and only then is it required to consider whether to use the older age category based on the applicable factors. 20 C.F.R. § § 4014.1563(b), 416.963(b). "Few" is defined as generally "consisting of or amounting to only a small number" or "at least some but indeterminately small in number." Merriam Webster's Collegiate Dictionary, 10th ed., 1996 , pg 431.

A Hallex[4] provides more guidance to the ALJ on this exact issue:

**B. Identifying a Borderline Age Situation**
If application of a claimant's chronological age results in a decision that the claimant is not disabled, an ALJ will identify whether the claim may involve a borderline age situation by applying a two-part test:
• Is the claimant's age **within a few days or a few months of the next** higher age category?
• Will the higher age category result in a decision of "disabled" instead of "not disabled"?
**If the answer to one or both parts of the test is "no," a borderline age situation either does not exist or would not affect the outcome of the decision. The ALJ will then use the claimant's chronological age**.
If the answer to both parts of the test is "yes," a borderline age situation exists, and the ALJ must decide whether it is more appropriate to use the claimant's chronological age or the higher age category.
**1. Is the Claimant's Age Within a Few Days or Months of the Next Higher Age Category?**
**SSA does not have a precise programmatic definition for the phrase "within a few days to a few months." The word "few" should be defined using its ordinary meaning, e.g., a small number. Generally, SSA considers a few days to a few months to mean a period not to exceed six months**.
To decide the first part of the test, ALJs will assess whether the claimant reaches or will reach the next higher age category within a few days to a few months after the:
• Date of adjudication;
• Date last insured;
• End of disabled widow(er)'s benefit prescribed period;
• End of child disability re-entitlement period; or
• Date of cessation of disability.

---

[4] While HALLEXs are helpful guidance at times, they are not controlling, especially so where statutes speak on the matter. The Fourth Circuit has provided no guidance as to whether a HALLEX carries the force of law and is binding on the Commissioner; other federal circuits have issued conflicting opinions on the matter. *Mack v. Colvin*, 2014 WL 1366030, at *4 (D.S.C. Mar. 20, 2014), *citing Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000); *Bordes v. Comm'r*, 235 Fed. Appx. 853, 859 (3d Cir. 2007); *Moore v. Apfel*, 216 F.3d 864, 868–69 (9th Cir. 2000); *Calhoun v. Astrue*, 2010 WL 297823 (W.D.V.A. Jan. 15, 2010). This court has generally adopted the position that, although a HALLEX does not have the force of law, a failure to follow its procedures that results in prejudice to the claimant constitutes reversible error. *Id.*, *citing Way v. Astrue*, No. 1:10-1134-RBH, 789 F. Supp. 2d 652, 665 (D.S.C. 2011).

Hallex I-2-2-42. BORDERLINE AGE, 2016 WL 1167001, at *1 (emphasis added).

Plaintiff's point of contention is that Plaintiff was six months and six days from the next age category. This exceeds the SSA's general meaning of a period not to exceed six months and also exceeds the dictionary ordinary meaning of the word. The ALJ did not err in not performing a borderline age evaluation because per the HALLEX, if the answer to the question is "no," then a borderline age situation does not actually exist and the ALJ uses the chronological age and there is no "factor" analysis required. *Id.* at *1.

Substantial evidence supports that there was no borderline age situation here to require the consideration of the factors in the borderline age evaluation.

### III.  CONCLUSION

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence. *Richardson*, 402 U.S. at 390.  Even where the Plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. *Blalock*, 483 F.2d at 775.  The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).  As previously discussed, despite the Plaintiff's claims, he has failed to show that the Commissioner's decision was not based on substantial evidence.  Based upon the foregoing, and pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631(c)(3) of the Social Security Act,

42 U.S.C. Sections 405(g) and 1338(c)(3), the Commissioner's decision is AFFIRMED.

s/ Thomas E. Rogers, III

October 12, 2021                                               Thomas E. Rogers, III
Florence, South Carolina                United States Magistrate Judge